## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

AMERICAN PATRIOT BRANDS, INC., URBAN PHARMS, LLC, DJ & S PROPERTY #1, LLC, TSL DISTRIBUTION, LLC, ROBERT Y. LEE, BRIAN L. PALLAS, AND J. BERNARD RICE,

Defendants, and

PUERTO RICO ONE CORPORATION, CASTRO BUSINESS ENTERPRISES, LLC, AND LEGION ACCOUNTING SERVICES, INC.

Relief Defendants.

Case No. 3:23-cv-01124

**ORAL ARGUMENT REQUESTED**

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' AND RELIEF DEFENDANTS' (I) MOTION TO TRANSFER, OR IN THE ALTERNATIVE, MOTION TO DISMISS: (II) ALL CLAIMS RELATING TO NON-PUERTO RICO TRANSACTIONS FOR LACK OF VENUE, AND (III) ALL CLAIMS RELATING TO ALL TRANSACTIONS AND ALL DEFENDANTS AND RELIEF DEFENDANTS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ................................................................................ 2

ARGUMENT ....................................................................................................... 6

I.    UNDER 28 U.S.C. § 1404(A), THE COURT SHOULD TRANSFER THE CASE IN ITS ENTIRETY TO THE CENTRAL DISTRICT OF CALIFORNIA. ...................... 7

    A.    The Convenience of the Witnesses and the Parties Weighs Heavily in Favor of Transfer. ............................................................................... 9

        1.    The Central District of California Is More Convenient for Non-Party Witnesses. ...................................................................... 9

        2.    The Central District of California Is More Convenient for the Parties. ................................................................................... 11

    B.    The Availability of Documents Weighs Heavily in Favor of Transfer. .............. 13

    C.    The Possibility of Consolidation Weighs Heavily in Favor of Transfer. ............ 14

II.    BECAUSE EACH OF THE FOUR OFFERINGS CONSTITUTES A DISTINCT NUCLEUS OF OPERATIVE FACT, AND THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO ESTABLISH VENUE IN PUERTO RICO WITH RESPECT TO THE NON-PUERTO RICO TRANSACTIONS, THE COURT SHOULD DISMISS THE COMPLAINT AS IT RELATES TO THOSE TRANSACTIONS. ................................................................................. 15

    A.    Each of the Four Offerings Constitutes a Distinct Nucleus of Operative Fact. ................................................................................. 15

    B.    The Complaint Fails To Allege Sufficiently Venue with Respect to the Non-Puerto Rico Transactions (First Offering, Third Offering, and Fourth Offering). ........................................................................ 19

    C.    Under Section 1406(a), the Court Should Dismiss the Claims Related to the Non-Puerto Rico Transactions. .................................................. 20

III.    THE COURT SHOULD DISMISS THE COMPLAINT AGAINST ALL DEFENDANTS AND RELIEF DEFENDANTS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B). ......................................................................... 21

    A.    The Complaint Fails To State a Claim Against Any Defendant or Relief Defendant Under Rule 12(b)(6). ...................................................... 21

    B.    The Complaint Fails To Allege Venue Under Federal Rule of Civil Procedure 12(b)(3) in this District Against Defendants Urban Pharms, DJ&S, and TSL. .......................................................................... 24

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................22, 23, 24

*Bearse v. Main Street Invs.,*
170 F. Supp. 2d. 107 (D. Mass. 2001) ....................................................................19

*Bowen v. eLanes N.H. Holdings, LLC,*
166 F. Supp. 3d 104 (D. Mass. 2015) ....................................................................9

*Boyce Motor Lines, Inc. v. United States,*
342 U.S. 337 (1952)................................................................................................2

*Castillo-Hiraldo v. Delta Air Lines, Inc.,*
2016 WL 1642629 (D.P.R. Apr. 25, 2016)..............................................................7

*CFTC v. Cromwell Fin. Servs.,*
2006 U.S. Dist. LEXIS 6753 (D.N.H. 2006) ....................................................7, 11

*Colon Perez v. Metan Marine, Inc.,*
2018 WL 1664697 (D.P.R. Apr. 4, 2018)................................................................9

*Cordis Corp. v. Cardiac Pacemakers,*
599 F.2d 1085 (1st Cir. 1979)................................................................................19

*DiPizio v. Empire State Dev. Corp.,*
2015 WL 5824704 (S.D.N.Y. Oct. 5, 2015) ..........................................................9

*Fort v. Wilkie,*
2021 U.S. Dist. LEXIS 244566 (D.P.R. Dec. 21, 2021).......................................14

*Get in Shape Franchise, Inc. v. TFL Fishers, LLC,*
167 F.Supp.3d 173 (D. Mass. 2016) ......................................................................19

*Gonzalez-Camacho v. Banco Popular De Puerto Rico,*
318 F. Supp. 3d 461 (D.P.R. 2018).................................................................21, 22

*GRJG Inc., v. Sokol,*
2011 WL 13319679 (D.P.R. Jun. 21, 2011) ..........................................................19

*Najera v. United States,*
2016 U.S. Dist. LEXIS 162110 (E.D. Va. Nov. 22, 2016)....................................19

*In re Parmalat Secs. Litig.*,
    479 F. Supp. 2d 332 (S.D.N.Y. 2007)......................................................................22

*Int'l Food Serv. Purchasing Grp., Inc. v. Chicago Premium Steaks, LLC*,
    2020 WL 4437127 (D.P.R Jul.31, 2020) ..................................................................7

*Ritchie Cap. Mgmt., LLC v. U.S. Bank Nat'l Ass'n*,
    2015 WL 1611391 (S.D.N.Y. Apr. 10, 2015)..........................................................13

*Rodriguez-Santiago v. Puerto Rico*,
    2011 WL 6046606 (D.P.R. Nov. 30, 2011) ..............................................................21

*SEC v. Am. Renal Assoc. Holdings*,
    2022 WL 1166087 (S.D.N.Y. Apr. 20, 2022)..................................................8, 10, 11

*SEC v. Chan*,
    465 F. Supp. 3d (D. Mass. 2020) ............................................................................23

*SEC v. First Nat'l Fin.*,
    392 F. Supp. 239 (N.D. Ill. 1975) ...................................................................10, 11

*SEC v. Kearns*,
    2009 WL 2030235 (S.D.N.Y. July 14, 2009) ........................................................12

*SEC v. Page Airways, Inc.*,
    464 F. Supp. 461 (D.D.C. 1978) ............................................................................12

*SEC v. Rivzi*,
    2010 WL 2949311 (E.D. Tex. July 2, 2010) ....................................................19, 20

*SEC v. Tambone*,
    597 F. 3d 436 (1st Cir. 2010)..................................................................................23

*SEC v. U.S. Env't Inc.*,
    897 F. Supp. 117 (S.D.N.Y. 1995)..........................................................................23

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946)..........................................................................................23, 24

*Sonate Corp. v. Dunkin' Brands Grp., Inc.*,
    2023 U.S. Dist. LEXIS 50677 (D. Mass. Mar. 24, 2023)..........................................2

*Stars for Art Prod. FZ, LLC v. Dandana, LLC*,
    806 F. Supp. 2d 437 (D. Mass. 2011) .....................................................................24

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)....................................................................................................7

*Stone #1 v. Annucci*,
2021 WL 4463033 (S.D.N.Y. Sept. 28, 2021)................................................................24

*United States ex rel. Cherox, Inc. v. Travelers Cas. & Sur. Co.*,
2015 U.S. Dist. LEXIS 92718 (D.P.R. July 15, 2015) ...................................................7

*United States v. Posner*,
549 F. Supp. 475 (1982) ...............................................................................................14

**Statutes**

15 U.S.C.
§ 77q(a)...........................................................................................................................18
§ 77v(a)...................................................................................................................8, 19, 24
§ 78aa...................................................................................................................7, 19, 24
§ 78aa(a).........................................................................................................................8
§ 78q(b)...........................................................................................................................18

28 U.S.C.
§ 1404(a) ...................................................................................................... *passim*
§ 1406(a) ...................................................................................................... *passim*

**Rules**

17 C.F.R. § 240.10b-5....................................................................................................18

Fed. R. Civ. P.
8.....................................................................................................................................24
8(a)(2)......................................................................................................................21, 23
9..............................................................................................................................23, 24
9(b)................................................................................................................................23
10(b)..................................................................................................................15, 21, 22
12(b)(3) ...................................................................................................... *passim*
12(b)(6)........................................................................................................1, 2, 6, 25

Defendants American Patriot Brands, Inc. ("American Patriot Brands"), Urban Pharms, LLC ("Urban Pharms"), DJ & S Property #1, LLC ("DJ&S"), TSL Distribution, LLC ("TSL"), Robert Y. Lee ("Lee"), Brian L. Pallas ("Pallas"), and J. Bernard Rice ("Rice") (collectively, the "Defendants"); and Castro Business Enterprises, LLC ("Castro Enterprises"), Puerto Rico One Corporation ("PR One"), and Legion Accounting Services, Inc. ("Legion") (collectively, the "Relief Defendants") respectfully move to transfer this action in its entirety to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)"); or, in the alternative, move to dismiss all claims relating to Non-Puerto Rico Transactions (as defined below) for lack of venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) ("Section 1406(a)") and move to dismiss all claims relating to all four alleged transactions (the "Transactions") and all Defendants under Federal Rule of Civil Procedure 12(b)(6). Defendants and Relief Defendants respectfully request oral argument on this Motion.

## PRELIMINARY STATEMENT

The SEC's Complaint fails to allege sufficiently venue in this District for three of the four alleged offerings at issue and for most of the Defendants. Venue is proper in the District of Puerto Rico *only* for the alleged acts or transactions identified in the Complaint as the "Second Offering." The Complaint does not set forth facts to support venue for the alleged acts or transactions identified in the Complaint as the "First Offering," the "Third Offering," or the "Fourth Offering." The First Offering, the Third Offering, and the Fourth Offering (collectively, the "Non-Puerto Rico Transactions") do not share a common nucleus of operative fact with the Second Offering and have no alleged connection to Puerto Rico. To serve the interests of justice and for the convenience of parties and witnesses, this Court should transfer this case in its

entirely to the United States District Court for the Central District of California where venue is proper as to *all* four of the alleged offerings, pursuant to Section 1404(a).

In the alternative, this Court should dismiss the claims related to the Non-Puerto Rico Transactions for lack of venue pursuant to Section 1406(a) and Federal Rule of Civil Procedure 12(b)(3).

Also in the alternative, the Court should dismiss the Complaint for failure to state a claim against the Defendants and the Relief Defendants.  The SEC's Complaint is a classic example of an impermissible "shotgun" pleading that tries to sweep the Defendants and Relief Defendants into broadly-pleaded, catch-all claims and therefore fails to meet basic notice pleading requirements under the Federal Rules of Civil Procedure.  The Complaint also fails to plead materiality, scienter, or even allege that several Defendants had anything to do with the alleged securities violations.  This Court should dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Attached hereto as Exhibit A is a summary chart of the grounds for transfer or dismissal to aid the Court.

## **FACTUAL BACKGROUND**[1]

Defendant American Patriot Brands and its subsidiaries Urban Pharms, DJ&S, and TSL legally cultivate and sell medicinal and recreational cannabis in Oregon.  Compl. ¶¶ 1, 7-9; Declaration of Michael D. Wheatley, attached hereto as Exhibit B ("Wheatley Decl.") ¶ 2.[2] American Patriot Brands is a Nevada corporation with its corporate headquarters in Newport Beach, California (Compl. ¶ 6), which is located in the Central District of California.  Robert Lee (American Patriot Brands' Chief Executive Officer and Chairman) and Brian Pallas (American

---

[1] We dispute the SEC's factual allegations, but on this Motion to dismiss, we must accept, *arguendo*, the factual allegations on their face.  *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337 (1952).
[2] "On a motion to transfer venue, the Court is permitted to consider materials outside the pleadings."  *Sonate Corp. v. Dunkin' Brands Grp., Inc.*, 2023 U.S. Dist. LEXIS 50677, at *6 (D. Mass. Mar. 24, 2023).

Patriot Brands' Chief Operating Officer) both live and work in and around Newport Beach, California.  *Id*. ¶¶ 10–11.  Bernard Rice, who formerly served as American Patriot Brands' Chief Financial Officer and Executive Vice President of Corporate Development from 2017 to 2019, lives in Roswell, Georgia.  *Id*. ¶ 12.  American Patriot Brands' subsidiaries are Oregon limited liability companies doing business in Oregon: DJ&S owns a cannabis farm in Medford, Oregon (the "Oregon Farm"); Urban Pharms operates the Oregon Farm; and TSL legally sells cannabis from American Patriot Brands and others in Portland, Oregon.  *Id*. ¶¶ 7–9.

The Complaint alleges two counts of securities fraud against the Defendants and one count of unjust enrichment against the Relief Defendants.  Each of these counts relates to four *separate and distinct* offerings, as identified in the Complaint under different headings: the "First Offering," which consists of the alleged offer and sale by American Patriot Brands of unspecified securities from 2016 to 2019, with *no* allegations of them being offered in this District (Compl. ¶¶ 23–60); the "Second Offering," which consists of the alleged offer and sale by American Patriot Brands of convertible promissory notes from July 2019 to March 2020 through a broker-dealer (*id*. ¶¶ 61–73); the "Third Offering," which consists of the alleged offer and sale by American Patriot Brands of convertible promissory notes from July 2021 to June 2022 through a video, with *no* allegations of them being offered in this District (*id*. ¶¶ 74–79); and the "Fourth Offering," which consists of the alleged offer by DJ&S of ownership interests and revenue from the Oregon Farm from 2022 to the present, with *no* allegations of them being offered in this District (*id*. ¶¶ 80–82) (individually, an "Offering," and collectively, the "Offerings").

The *only* factual allegation connecting any part of this case to the District of Puerto Rico is that the Second Offering allegedly "was made almost exclusively to Puerto Rican residents, at

least 47 of whom purchased, collectively, over $3.2 million worth of [American Patriot Brands] securities." *Id*. ¶ 17.  The Complaint, however, does not allege any involvement whatsoever by Defendants Urban Pharms, DJ&S, TSL, or Rice in this Second Offering or anything to connect them to this District.

None of the events relevant to the Non-Puerto Rico Transactions is alleged to have occurred in this District.  *See id*. ¶¶ 25–47, 57 (First Offering); *id*. ¶¶ 77–79 (Third Offering); *id*. ¶ 82 (Fourth Offering).  Instead, all operative events relevant to the Non-Puerto Rico Transactions occurred in the Central District of California.  The Complaint does not allege that any resident of Puerto Rico was involved in any way in the Non-Puerto Rico Transactions.  *Cf. id.* ¶¶ 17, 61.

None of the Defendants resides in this District or has an office in this District.  American Patriot Brands is a Nevada corporation with its headquarters in Newport Beach, California in the Central District of California.  *Id.* ¶ 6.  Lee and Pallas reside in the Central District of California. *Id.* ¶¶ 10–11.  Rice is a former officer of American Patriot Brands and now resides in Georgia. *Id.* ¶ 12.  DJ&S, Urban Pharms, and TSL, which the SEC alleges are owned by American Patriot Brands, are Oregon companies with their principal places of business in Oregon.  *Id.* ¶¶ 7–9.[3] None of the non-party accountants, appraisers, lawyers, or specifically-referenced investors in the Complaint resides in Puerto Rico.  Ex. B, Wheatley Decl. ¶¶ 4–9.  The parties and key witnesses in this case all reside in the Central District of California.  *Id.*

---

[3] Relief Defendants PR One and Castro Enterprises are based in Puerto Rico.  They join this Motion and support transfer to the Central District of California, or in the alternative, dismissal.  Relief Defendant Legion, a California corporation with its principal place of business in the Central District of California, also fully joins this Motion.

**First Offering (Non-Puerto Rico Transaction)**.  Most of the key witnesses relevant to the First Offering reside in and around Newport Beach, California, and none of them resides in Puerto Rico:

- Mr. Lee, Mr. Pallas, and Lee Patin (American Patriot Brands' Controller) (Compl. ¶¶ 10-11; Ex. B, Wheatley Decl. ¶¶ 3, 4(b));

- An unnamed American Patriot Brands employee mentioned in paragraphs 30, 45, 46, and 57(c) (Robert Borland who resides in Orange County, California) (Ex. B, Wheatley Decl. ¶ 4(c));

- An individual associated with the alleged "APB Valuation" mentioned in paragraph 38 (Jon Zimmerman who resides in Los Angeles, California) (Ex. B, Wheatley Decl. ¶ 4(g)); and

- American Patriot Brands' auditors referred to in paragraphs 48 and 49 (Tony Price of Hall & Company who resides in the Central District of California) (Ex. B, Wheatley Decl. ¶ 4(h)).

Investors 1–6 reside outside Puerto Rico (Compl. ¶ 24 and Ex. B, Wheatley Decl. ¶ 4(m)).  All other key witnesses relevant to the First Offering live outside Puerto Rico: Mr. Rice (Compl. ¶¶ 12, 24; Roswell, Georgia); Accountant 1 (Marty Weigel) (*id*. ¶ 54 and Ex. B, Wheatley Decl. ¶ 4(i); Reno, Nevada); an unnamed American Patriot Brands employee (Jonathan Morris) (Compl. ¶ 56 and Ex. B, Wheatley Decl. ¶ 4(f); New York); the Jackson County, Oregon appraisers (Compl. ¶ 68 and Ex. B, Wheatley Decl. ¶ 4(j)); the retired Army general (Compl. ¶ 29 and Ex. B, Wheatley Decl. ¶ 4(k); Little Rock, Arkansas); and the Bay Valuation Advisers ("BVA") appraiser (Jeff Stuecken) (Compl. ¶ 35 and Ex. B, Wheatley Decl. ¶ 4(l); Boston, Massachusetts).  None of the witnesses resides in Puerto Rico.  Ex. B, Wheatley Decl. ¶ 4.

**Second Offering**.  At least three of the key witnesses relevant to the Second Offering live in California: Mr. Lee and Mr. Pallas (Newport Beach, California) and representatives of the third-party license facilitator (Element 7; Josh Black, Robert DiVito) (Compl. ¶ 69 and Ex. B, Wheatley Decl. ¶¶ 5(b), 5(c); all California).  Other key witnesses relevant to the Second

Offering live outside Puerto Rico: the Jackson County, Oregon appraisers (Compl. ¶ 68 and Ex. B, Wheatley Decl. ¶ 4(j)); the retired Army general (Compl. ¶ 70 and Ex. B, Wheatley Decl. ¶ 5(d); Little Rock, Arkansas); and an individual associated with the broker-dealer (John Randolph) (Compl. ¶ 62 and Ex. B, Wheatley Decl. ¶ 5(a); Austin, Texas).

**Third Offering (Non-Puerto Rico Transaction)**.  All witnesses relevant to the Third Offering reside in Newport Beach, California, *i.e.*, Mr. Lee and the appraiser identified in paragraph 75 (Sydney Warburton).  Compl. ¶ 10; Ex. B, Wheatley Decl. ¶ 6.  None of the witnesses resides in Puerto Rico.  Ex. B, Wheatley Decl. ¶ 6.

**Fourth Offering (Non-Puerto Rico Transaction)**.  All witnesses relevant to the Fourth Offering are in the Central District of California: Mr. Lee and Mr. Pallas reside in or around Newport Beach, California.  Compl. ¶¶ 10–11; Ex. B, Wheatley Decl. ¶ 7.  The real estate brokerage firm referred to in the Complaint (Compl. ¶ 80) is also in the Central District of California.  Ex. B, Wheatley Decl. ¶ 7(a).  No witnesses relevant to the Fourth Offering reside in Puerto Rico.  *Id.* ¶ 7.

## ARGUMENT

In the "interest of justice" and for "the convenience of parties and witnesses," this Court should transfer the case in its entirety pursuant to Section 1404(a) to the United States District Court for the Central District of California.  Alternatively, this Court should dismiss the claims related to the Non-Puerto Rico Transactions for improper venue, pursuant to Rule 12(b)(3) and Section 1406(a).  Also in the alternative, this Court should dismiss the Complaint in its entirety against all Defendants and Relief Defendants for failing to state a claim pursuant to Rule 12(b)(6).  To aid the Court, the arguments relating to each Defendant and Relief Defendant are summarized in the chart appended as Exhibit A.

I.      **UNDER 28 U.S.C. § 1404(A), THE COURT SHOULD TRANSFER THE CASE IN ITS ENTIRETY TO THE CENTRAL DISTRICT OF CALIFORNIA.**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The Supreme Court has explained that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  In exercising its discretion, a district court should consider the interests of justice and "(1) the convenience of the parties and the witnesses, (2) the availability of documents, (3) the possibility of consolidation, and (4) the order in which the district court obtained jurisdiction."  *Castillo-Hiraldo v. Delta Air Lines, Inc.*, 2016 WL 1642629, at *1 (D.P.R. Apr. 25, 2016) (Delgado-Hernandez, J.) (citation omitted); 28 U.S.C. § 1404(a).  As this Court previously recognized, "[w]hen evaluating a Section 1404(a) motion, courts should employ *a relaxed standard*."  *United States ex rel. Cherox, Inc. v. Travelers Cas. & Sur. Co.*, 2015 U.S. Dist. LEXIS 92718, *5 n.3 (D.P.R. July 15, 2015) (Delgado-Hernandez, J.) (emphasis added) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

The Court should accord no weight to the SEC's choice of forum.  Because "'as a federal regulatory agency, the SEC does not need the same inducement to enforce the securities laws' as private parties do . . . any special deference given the plaintiff's choice of venue under section 78aa [*i.e.*, the Exchange Act] should therefore not extend to the SEC."  *CFTC v. Cromwell Fin. Servs.*, 2006 U.S. Dist. LEXIS 6753, at *12 (D.N.H. Feb. 22, 2006) (quoting *SEC v. Captain Crab, Inc.*, 655 F. Supp. 615, 617 n.1 (S.D.N.Y. 1986)).  Further, although there generally "is a strong presumption in favor of plaintiff's choice of forum . . . 'where transactions or facts giving

rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same weight and in fact is given reduced significance.'" *Delta Air Lines*, 2016 U.S. Dist. LEXIS 55806, at *3 (quoting *Arroyo-Pérez v. Demir Grp. Int'l*, 733 F. Supp. 2d 314, 318 (D.P.R. 2010)).

Venue would be proper in the Central District of California for claims related to all four alleged Offerings. American Patriot Brands has its headquarters in the Central District of California (Compl. ¶ 6), the two principal individual Defendants reside and work in the Central District of California (*id.* ¶¶ 10–11), and all Defendants transacted business in the Central District of California. Ex. B, Wheatley Decl. ¶¶ 2, 3; *see also* 15 U.S.C. § 77v(a), 78aa(a). Indeed, it appears that the SEC's practice, like that of the CFTC, is to sue defendants in the district where they reside. *Cf. CFTC v. First Nat'l Monetary Corp.*, 565 F. Supp. 30, 32 (N.D. Ill. 1983).

As more fully explained *infra* Section II, the Complaint entirely fails to allege any connection—much less facts sufficient to establish venue—with the District of Puerto Rico for the claims related to the Non-Puerto Rico Transactions. Further, although the SEC alleges that the Second Offering "was made almost exclusively to Puerto Rican residents" (Compl. ¶ 17), the Complaint does not allege that any of the Defendants were in Puerto Rico when the alleged misstatements or omissions were made. *See SEC v. Am. Renal Assoc. Holdings*, 2022 WL 1166087, at *3 (S.D.N.Y. Apr. 20, 2022) (finding venue in Massachusetts but not New York and observing that "[i]t is of little or no relevance [to the determination of the locus of operative facts] that Defendants made misrepresentations to persons or entities located in New York, as it is undisputed that Defendants were in Massachusetts when the alleged statements were made").

The Complaint also does not allege that any of the 47 purchasers of the Second Offering remains a resident of Puerto Rico.

The convenience of the witnesses and the parties, the availability of documents, and the possibility of consolidation all weigh heavily in favor of transfer to the Central District of California.[4]  As such, the Court should exercise its discretion under Section 1404(a) and transfer the *entire* action to the Central District of California.

A.   **The Convenience of the Witnesses and the Parties Weighs Heavily in Favor of Transfer.**

 "[T]he convenience of witnesses is probably the most important factor in deciding whether to transfer." *Int'l Food Serv. Purchasing Grp., Inc. v. Chicago Premium Steaks, LLC*, 2020 WL 4437127, at *4 (D.P.R. July 31, 2020) (citation omitted).  Courts consider "the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Id.* at *11 (quoting *Bowen v. eLanes N.H. Holdings, LLC*, 166 F. Supp. 3d 104, 109 (D. Mass. 2015)).

1.   *The Central District of California Is More Convenient for Non-Party Witnesses.*

The convenience of the Central District of California for the non-party witnesses—many of whom are in the Central District of California, and none of whom is in Puerto Rico—weighs heavily in favor of transfer.  *See Colon Perez v. Metan Marine, Inc.*, 2018 WL 1664697, at *9 (D.P.R. Apr. 4, 2018) ("Importantly, district courts give the convenience for non-party witnesses *even greater weight*.") (emphasis added); *see also DiPizio v. Empire State Dev. Corp.*, 2015 WL 5824704, at *5 (S.D.N.Y. Oct. 5, 2015) (Courts "weigh[ ] more heavily the convenience of non-party witnesses than party witnesses") (internal quotation marks omitted).

---

[4] Because there is only one action, the final factor in the analysis (*i.e.*, "the order in which the district court obtained jurisdiction") is not relevant.

The key non-party witnesses in this case will be American Patriot Brands' professional service providers.  American Patriot Brands' outside accountants are located in Irvine, California (Greg Andrews); Newport Beach, California (Dave Horin); and Reno, Nevada (Accountant 1, *i.e.*, Marty Weigel).  Ex. B, Wheatley Decl. ¶ 8.  American Patriot Brands' auditors (Hall & Company; Tony Price) are also located in California.  *Id.* ¶ 4(h).  American Patriot Brands' securities lawyers who advised on the offerings are located in the Central District of California or elsewhere in Southern California (Randy Katz, Young Kim, and Arden Anderson).[5]  *Id.* ¶ 9. These professionals are critical non-party witnesses in the case, and each of them has an active practice in or near the Central District of California that makes it inconvenient for them to travel to Puerto Rico.  The appraiser identified in paragraph 75 (Sydney Warburton) is in Newport Beach, California.  Ex. B, Wheatley Decl. ¶ 6(a).  Again, the appraiser is a critical non-party witness and has an active practice in the Central District of California that makes it difficult for him to travel to Puerto Rico.  In short, Puerto Rico is an inconvenient forum for all of these critical, non-party witnesses.

Further, the SEC has not alleged that the individuals who made purchases through the Offerings (the "Purchasers") have any knowledge about the alleged securities fraud. Accordingly, the Purchasers are not "principal witnesses," and their location is not "material to the Court's decision on a motion to transfer."  *SEC v. First Nat'l Fin.*, 392 F. Supp. 239, 241 (N.D. Ill. 1975) (transferring the action notwithstanding the SEC's contention that "approximately 70% of the . . . investors, that is, 110 out of a total number of 160, reside in the [SEC-plaintiff's chosen district]"); *see also Am. Renal Assoc. Holdings*, 2022 WL 1166087, at *3 (transferring the action where none of the witnesses residing in the transferor district was

---

[5] To be clear, Defendants and Relief Defendants do not waive any attorney-client or other privileges or protections and reserve the right to assert an advice of counsel defense at the appropriate point.

"identified by name in the Complaint" or "alleged to have firsthand knowledge of the fraudulent scheme described in the Complaint"). *Even if* the location of the Purchasers were relevant, there are undoubtedly more Purchasers who are not residents of Puerto Rico than there are Purchasers who are residents of Puerto Rico. The Complaint alleges that American Patriot Brands raised approximately $30 million from "more than 100 investors" (Compl. ¶ 1), but only $3.2 million— barely more than 10% of the total alleged amount—from just 47 purchasers through the Second Offering (*id*. ¶ 61). The Complaint further does not allege that any of the individuals who made purchases through the Second Offering remains a Puerto Rico resident.

2.   ***The Central District of California Is More Convenient for the Parties.***

The convenience of the Central District of California for the Defendants, including their officers, employees, and undersigned defense counsel, weighs heavily in favor of transfer to the Central District of California. *Cromwell Fin. Servs.*, 2006 U.S. Dist. LEXIS 6753, at *14–15 (granting motion to transfer where "most of their witnesses, who [defendants] identify as their officers and employees, are concentrated in [the transferee district]"); *see Am. Renal Assoc. Holdings*, 2022 WL 1166087, at *3 (granting transfer and observing that the "most central persons" with knowledge of the facts on which "the case would likely turn" reside in the transferee district); *First Nat'l Fin.*, 392 F. Supp. at 241 (transferring case because "the principal witnesses . . . will be the officers and employees with knowledge of the financial condition of the two corporations" who reside in the transferee district).

American Patriot Brands, the main Defendant in this action, has its headquarters in the Central District of California. Compl. ¶ 6. American Patriot Brands' Chief Executive Officer and Chairman, its Chief Operating Officer, and its Controller all reside in the Central District of California. *Id*. ¶¶ 10–11; Ex. B, Wheatley Decl. ¶¶ 3, 4(b). None of the unidentified American Patriot Brands employees referenced in paragraphs 30, 45, 46, 56, and 57(c) resides in Puerto

Rico.  Ex. B, Wheatley Decl. ¶ 4.  Two of the individual Defendants, Mr. Lee and Mr. Pallas, personally are involved heavily in harvesting the crop at the Oregon Farm, overseeing shipments of American Patriot Brands' products, and day-to-day operations.  *Id.* ¶ 10.  If Messrs. Lee and Pallas were forced to travel to this District to defend this case, the operations of American Patriot Brands would suffer, thereby harming the very investors that the SEC seeks to protect.  *Id.*  The fact that American Patriot Brands' business would be "substantially disrupted by having litigation proceed in an inconvenient forum" supports a transfer to the Central District of California.  *SEC v. Page Airways, Inc.*, 464 F. Supp. 461, 463 (D.D.C. 1978) (granting transfer where "the individual defendants in this action represent a large part of Page's senior management").  Lead defense counsel (Paul Hastings LLP) has three offices in the Central District of California and plans to conduct the defense from its Orange County office.  Ex. B, Wheatley Decl. ¶ 16.

None of the other Defendants resides in Puerto Rico.  DJ&S, Urban Pharms, and TSL are subsidiaries of American Patriot Brands and operate from Oregon.  Compl. ¶¶ 7–9.  Mr. Rice lives in Georgia, *Id.* ¶ 12,[6] and travels regularly to the Central District of California, which is far more convenient for him than Puerto Rico.  Ex. B, Wheatley Decl. ¶ 11.

In addition, there are special circumstances that warrant transferring this litigation to the Central District of California.  Ms. Patin, a key witness in this case, is the principal caretaker for her elderly mother and travel to Puerto Rico will be a significant inconvenience.  Ex. B, Wheatley Decl. ¶ 12.  Further, Mr. Lee is the sole caregiver to his 92-year-old, infirm mother.

---

[6] Although Relief Defendants PR One and Castro Enterprises are based in Puerto Rico, they join this Motion and support transfer to the Central District of California, or, in the alternative, dismissal.  The location of the Relief Defendants "is of not great significance for purposes of [the transfer] evaluation" because they are not liability witnesses.  *See Delta Air Lines*, 2016 U.S. Dist. LEXIS 55806, at *4 (citing *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356-57 (N.D. Ga. 2004) ("When considering a transfer of venue, the key witnesses are those which have information regarding the *liability* of Defendant.") (emphasis added)).

*Id.* ¶ 14.  Mr. Lee provides her daily care, takes her to doctors' appointments, and ensures that she receives the appropriate dosages of medicine.  *Id.*  Mr. Pallas is 75 years old and is currently being treated for hypertension and stress.  *Id.* ¶ 13.  Mr. Pallas' health considerations make travel challenging.  *Id.*

On the other hand, transferring this case to the Central District of California will not add inconvenience to the SEC.  *See SEC v. Kearns*, 2009 WL 2030235, at *4 (S.D.N.Y. July 14, 2009) (transferring case from New York to Philadelphia and observing that "while the SEC has an office in New York, it also has one in Philadelphia, which is 2.5 miles from the proposed transferee court, and the counsel representing the SEC work from its Washington, D.C. office").  The SEC has a regional office in Los Angeles in the Central District of California only a few miles away from the federal courthouse, and the SEC does not have any office in Puerto Rico.  The SEC attorney that signed the Complaint is based in Washington, D.C. and must travel whether the case is in this District or the Central District of California.  Compl. ¶ 25; Ex. B, Wheatley Decl. ¶ 15.

Because transferring this case to the Central District of California would be much more convenient for the witnesses, the Defendants, and defense counsel and does not add inconvenience to the SEC in any way, this consideration "clearly" supports a transfer.  *Ritchie Cap. Mgmt., LLC v. U.S. Bank Nat'l Ass'n*, 2015 WL 1611391, at *5 (S.D.N.Y. Apr. 10, 2015) ("No party resides in New York . . . .  A transfer, on balance, would therefore be much more convenient for the defendant, while not enhancing (or hindering) plaintiffs' convenience.  Under such circumstances, this factor 'clearly' supports a transfer.").

    B.    **The Availability of Documents Weighs Heavily in Favor of Transfer.**

The availability of documents weighs heavily in favor of transfer.  All the relevant documents are located outside Puerto Rico, and almost all of the documents and physical

evidence are located in the Central District of California.  American Patriot Brands' documents and those of the subsidiaries are located at its Newport Beach, California headquarters in the Central District of California.  Ex. B, Wheatley Decl. ¶ 2.  American Patriot Brands' outside lawyers, auditors, and accountants who were involved in the Offerings have relevant documents located in or near the Central District of California.  Ex. B, Wheatley Decl. ¶¶ 8–9.

The location of physical evidence is also a critical consideration in this litigation.  The Oregon Farm, which the SEC has made central to its case (Compl. ¶ 3), is located in Medford, Oregon, which is only two hours by direct flight from the Central District of California.  Defense counsel anticipates that physical inspection of the Oregon Farm to show the extent and viability of Defendants' operations will be critical to the defense.  *See United States v. Posner*, 549 F. Supp. 475, 478 (S.D.N.Y. 1982) (granting motion to transfer in a criminal case relating to a land appraisal to the district where the land was located).

C.    **The Possibility of Consolidation Weighs Heavily in Favor of Transfer.**

The possibility of consolidation—or, as here, the avoidance of a "split"—weighs heavily in favor of transfer.  Because the District of Puerto Rico is an inappropriate venue for the claims related to the Non-Puerto Rico Transactions, Section 1406(a) requires that this Court either dismiss those claims or transfer them to the Central District of California.  *See infra* Section II. Transferring the claims related to the Non-Puerto Rico Transactions to the Central District of California under Section 1406(a) and retaining the claims related to the Second Offering in the District of Puerto Rico, however, would be an inefficient use of judicial resources.  Where there is a venue that "would be appropriate for all of the claims," a motion to transfer to such a venue should be granted.  *Fort v. Wilkie*, 2021 U.S. Dist. LEXIS 244566, at *4 (D.P.R. Dec. 21, 2021) (Delgado-Hernandez, J.) (granting motion to transfer and explaining that the District of Puerto Rico was the appropriate venue for only certain claims).  Because the SEC can bring all of its

14

claims in the Central District of California, judicial economy weighs in favor of keeping the claims related to all four Offerings together and transferring the case in its entirety to the Central District of California.[7]

## II. BECAUSE EACH OF THE FOUR OFFERINGS CONSTITUTES A DISTINCT NUCLEUS OF OPERATIVE FACT, AND THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO ESTABLISH VENUE IN PUERTO RICO WITH RESPECT TO THE NON-PUERTO RICO TRANSACTIONS, THE COURT SHOULD DISMISS THE COMPLAINT AS IT RELATES TO THOSE TRANSACTIONS.

### A. Each of the Four Offerings Constitutes a Distinct Nucleus of Operative Fact.

Federal Rule of Civil Procedure 10(b) requires that, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). Here, the Complaint inappropriately groups its claims related to the Non-Puerto Rico Transactions with the claims related to the Second Offering in a baseless attempt to establish venue in Puerto Rico. *See* Compl. ¶ 17 (alleging that venue is proper as to all the Transactions because "*at least one* of the fraudulent offerings was made almost exclusively to Puerto Rican residents . . .") (emphasis added).

The Complaint sets forth separate allegations with respect to each Offering, without any overlap between allegations, in separately numbered sections: "First Offering" (Compl. ¶¶ 23–60); "Second Offering" (Compl. ¶¶ 61–73) (the only offering allegedly involving investors in this District); "Third Offering" (Compl. ¶¶ 74–79); "Fourth Offering" (Compl. ¶¶ 80–82). As the Complaint itself demonstrates, each of the four Offerings constitutes a distinct nucleus of operative fact.

---

[7] Upon transfer to the United States District Court for the Central District of California, that Court should dismiss the SEC's Complaint for the reasons set forth herein.

*First*, each of the four Offerings involved different types of assets offered by different entities.  The Complaint alleges that "[s]ome investors . . . purchas[ed] stock or options to buy stock in [American Patriot Brands]"; "*[o]ther* investors loaned [American Patriot Brands] funds pursuant to convertible promissory notes"; and "*[o]ther* investors were offered the right to receive rent and a percentage of the sales from . . . the Oregon Farm."  Compl. ¶ 19 (emphasis added).  In other words, the alleged offerings involve distinct assets: equity, notes, and real estate.  Compl. ¶ 24 (alleging the First Offering involved notes and equity); Compl. ¶¶ 61, 65 (alleging the Second Offering involved notes and equity); Compl. ¶ 76 (alleging the Third Offering involved notes); Compl. ¶ 80 (alleging the Fourth offering involved real estate).  The Complaint alleges that these assets were offered by different entities using different types of offering materials.  The First, Second, and Third Offerings allegedly were offered by American Patriot Brands.  Compl. ¶¶ 23, 61, 76.  But the Fourth Offering allegedly was offered by *DJ&S*, an Oregon limited liability company.  Compl. ¶¶ 7, 80.[8]

*Second*, each of the four Offerings involved different investors.  The Complaint distinguishes the First Offering by identifying a group defined as "Investors 1–6" whose involvement is limited exclusively to the First Offering.  Compl. ¶ 24.  None of these investors is or was located in Puerto Rico.  Ex. B, Wheatley Decl. ¶ 4(m).  The Complaint distinguishes the Second Offering from the other Offerings by uniquely alleging that it involved Puerto Ricans— no other Offering is alleged to have involved residents of Puerto Rico.  Compl. ¶ 61.

---

[8] There is no allegation in the Complaint establishing venue in Puerto Rico for DJ&S related to the Fourth Offering (the only "offering" in which DJ&S is alleged to have participated), and there is no allegation that DJ&S had any role with respect to the Second Offering (the alleged Puerto Rico offering).  Accordingly, there is no common nucleus of operative fact related to DJ&S between the Fourth Offering and the Second Offering.  For this additional reason, the Court should dismiss the claims against DJ&S.

*Third*, each of the four Offerings involve different alleged misstatements or omissions in different offering materials.  The First Offering, as alleged by the SEC, involved a number of misstatements or omissions made in electronic communications, presentations, and investor meetings about American Patriot Brands' 2016 and 2017 financials, the value of the Oregon Farm as established by three different valuations conducted in 2017 and 2018 (the 2017 BVA Appraisal, the 2017 Jackson County Appraisal, and the "APB Valuation" in 2018), the timing of American Patriot Brands' audited financial statements, and projected revenues from American Patriot Brands' potential expansion to other geographies.  Compl. ¶¶ 26–57.  By way of contrast, the SEC does not allege that the Second Offering involves misstatements or omissions about American Patriot Brands' financials.  Instead, the SEC alleges (1) misstatements and omissions related to two 2018 valuations of the Oregon farm (the 2018 appraisal by Jackson County Oregon and American Patriot Brands' "updated" valuation) and (2) the unique issue of American Patriot Brands' acquisition of licenses to operate dispensaries in California, which were communicated to potential investors via private placement memorandum.  Compl. ¶¶ 68–71.  Meanwhile, the SEC alleges that the misstatements and omissions related to the Third Offering were made by video and involve an entirely different appraisal of the Oregon Farm, statements about the Farm's acreage, and litigation related to the First Offering.  Compl. ¶¶ 75–79.  Although the SEC alleges that the Fourth Offering also involved misstatements and omissions about the Farm's acreage, these alleged misstatements and omissions allegedly were made via a brochure published on real estate brokerage websites and also involved statements about the Oregon Farm's harvest and production.  Compl. ¶ 82.

*Fourth*, the alleged misstatements or omissions with respect to each of the four Offerings were made through different means.  The First Offering involves alleged misstatements or

omissions made in emails and other communications that were transmitted or prepared in 2017, 2018, and 2019.  Compl. ¶¶ 26–29, 33, 42–47.  The Second Offering involves alleged misstatements or omissions made in a letter, a private placement memorandum, and a presentation.  Compl. ¶¶ 66, 68–69.  The Complaint further distinguishes the Second Offering from the other Transactions by uniquely alleging that American Patriot Brands used a broker-dealer to promote the offering and distribute the offering materials.  Compl. ¶ 62.  No other Offering is alleged to have involved a broker-dealer.  The Third Offering involves alleged misstatements or omissions made in a video available on the Internet.  Compl. ¶¶ 76–79.  Finally, the Fourth Offering involves alleged misstatements or omissions made in a brochure.  Compl. ¶ 82.  The Complaint does not allege any overlap in the materials used to promote or otherwise offer for sale each of the four Offerings.

*Fifth*, each of the four Offerings involves unique witnesses.  The First Offering allegedly involves Investors 1–6 (none of whom resides in Puerto Rico) and their representatives (Compl. ¶¶ 26, 28, 30, 31, 33, 57); unnamed American Patriot Brands employees (Compl. ¶¶ 45, 46, 56, 57(c)); the BVA appraiser (Jeff Stuecken) (Compl. ¶ 36); and Accountant 1 (Marty Weigel) (Compl. ¶ 54).  The Second Offering allegedly involves a broker-dealer (Compl. ¶ 62) and a license facilitator (Compl. ¶ 69).  The Third Offering allegedly involves a different appraiser (Sydney Warburton).  Compl. ¶ 75.  The Fourth Offering allegedly involves a real estate broker. Compl. ¶ 80.

*Finally*, each of the four Offerings occurred at different times over a seven-year period, from 2016 to present.  The First Offering allegedly occurred from 2016 through an unspecified time in 2019 (*id.* at ¶ 23); the Second Offering allegedly occurred from July 2019 through March 2020 (*id.* at ¶ 61); the Third Offering allegedly occurred from July 2021 through June 2022 (*id.*

at ¶ 76); and the Fourth Offering allegedly began at an unspecified time in 2022 and continues

through the present (*id.* at ¶ 80).

    B.    **The Complaint Fails To Allege Sufficiently Venue with Respect to the Non-Puerto Rico Transactions (First Offering, Third Offering, and Fourth Offering).**

    The Complaint alleges violations of Section 17(a) of the Securities Act of 1933, 15

U.S.C. § 77q(a) (the "Securities Act") and Section 10(b) of the Securities Exchange Act of 1934,

15 U.S.C. § 78q(b) (the "Exchange Act") and Rule 10b-5, 17 C.F.R. § 240.10b-5 thereunder.

Compl. ¶¶ 107–116.  Under the Securities Act, a claim can be brought in a district "wherein the

defendant is found or is an inhabitant or transacts business, or in the district where the offer or

sale took place, if the defendant participated therein."  15 U.S.C. § 77v(a).  Under the Exchange

Act, a claim can be brought in a district "wherein any act or transaction constituting the violation

occurred" or in a district "wherein the defendant is found or is an inhabitant or transacts

business."  15 U.S.C. § 78aa.  If a claim is brought based on an act or transaction having been

committed within the district, such act or transaction must "represent[] more than an immaterial

part of the allegedly illegal events."  *SEC v. Rivzi*, 2010 WL 2949311, at *3 (E.D. Tex. July 2,

2010).

    As the plaintiff, it is the SEC's burden to plead every fact required to satisfy venue as to

*each* claim.  *See*, *e.g.*, *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086–87 (1st Cir.

1979); *Get in Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 195 (D. Mass.

2016); *GRJG Inc., v. Sokol*, 2011 WL 13319679, at *1 (D.P.R. Jun. 21, 2011).  Because each of

the four Offerings represents a distinct nucleus of operative fact, the SEC must plead sufficient

facts to establish venue with respect to each Offering.  *See Bearse v. Main Street Invs.*, 170 F.

Supp. 2d 107, 116 (D. Mass. 2001) (declining to exercise pendent venue over multiple claims

against multiple parties and requiring plaintiff to establish venue for each claim and each

defendant); *Najera v. United States*, 2016 U.S. Dist. LEXIS 162110, at *21 (E.D. Va. Nov. 22, 2016) (declining to exercise pendent venue over claims that did not arise out of a common nucleus of operative fact).  Here, because none of the Defendants is located in, or an inhabitant of, Puerto Rico, venue is *only* proper in the District of Puerto Rico if—and the SEC must plead sufficient facts to establish that—the Defendants either (i) transacted business in Puerto Rico; (ii) made offers or sales in Puerto Rico with respect to *each* of the four Offerings; or (iii) engaged in an act in Puerto Rico, which represents "more than an immaterial part of the alleged violations," with respect to *each* of the four Offerings.  *See* 15 U.S.C. § 77v(a); 15 U.S.C. § 78aa; *Rivzi*, 2010 WL 2949311, at *3.

The Complaint entirely fails to allege any connection—much less facts sufficient to establish venue—with the District of Puerto Rico for the claims related to the Non-Puerto Rico Transactions.  No allegation in the Complaint suggests that even a single resident of Puerto Rico was offered or sold anything from the Non-Puerto Rico Transactions.  No allegation in the Complaint suggests that any act related to the Non-Puerto Rico Transactions was committed within this District.  *See supra* Background.  Without *any* such act, much less an act that represents "more than an immaterial part" of the alleged violations," *see Rivizi*, 2010 WL 2949311, at *3, venue in the District of Puerto Rico is improper for all claims related to the Non-Puerto Rico Transactions.

C.     **Under Section 1406(a), the Court Should Dismiss the Claims Related to the Non-Puerto Rico Transactions.**

Section 1406(a) provides that the "district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."  28 U.S.C. § 1406(a).  Rule 12(b)(3) of the Federal Rules of Civil Procedure authorizes a defendant to make a pre-answer

motion of dismissal for "improper venue."  Because the District of Puerto Rico is an improper

venue for claims related to the Non-Puerto Rico Transactions, and because it would not serve the

interests of justice to transfer this case in part, the Court should dismiss the claims related to the

Non-Puerto Rico Transactions.

### III.    THE COURT SHOULD DISMISS THE COMPLAINT AGAINST ALL DEFENDANTS AND RELIEF DEFENDANTS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B).

#### A.    **The Complaint Fails To State a Claim Against Any Defendant or Relief Defendant Under Rule 12(b)(6).**

The Federal Rules of Civil Procedure require plaintiffs to present "a short and plain

statement" of their claims, and where claims are "founded on a separate transaction or

occurrence," those claims "must be stated in a separate count or defense."  Fed. R. Civ. P.

8(a)(2); 10(b).  Failure to adhere to these basic rules results in a "shotgun" pleading, which

"fail[s] to provide the defendants with sufficient notice as to the claims against them" and should

be dismissed under Rule 12(b)(6).  *Gonzalez-Camacho v. Banco Popular De Puerto Rico*, 318 F.

Supp. 3d 461, 475, 482 (D.P.R. 2018) (dismissing complaint pursuant to Rule 12(b)(6) and

observing that "judges and adverse parties need not try to fish a gold coin from a bucket of

mud," as Rule 10(b) requires "distinct claims to be separated into counts") (citations omitted).

Here, the SEC broadly and inadequately alleges in Counts I and II that, "[b]y engaging in

the acts and conduct alleged above"—*i.e.*, in the preceding 20 pages and 101 paragraphs—

"Defendants APB, Urban Pharms, DJ&S, TSL, Lee, and Rice" violated Section 17(a) of the

Securities Act and Section 10(b) of the Exchange Act.  Compl. ¶¶ 108 (Count I); 113 (Count II).

The Complaint then broadly and inadequately alleges that Defendant Pallas—again, "[b]y

engaging in the acts and conduct alleged above"—is also liable.  Compl. ¶¶ 109-10 (Count I);

114-15 (Count II).  These boilerplate allegations fail to meet the basic pleading requirements

under the federal rules, as they simply "list[] a host of statutes and claim[] that each has been violated by multiple defendants collectively without specifying the liability or actions of each defendant . . . ." *Rodriguez-Santiago v. Puerto Rico*, 2011 WL 6046606, at *2 (D.P.R. Nov. 30, 2011) (finding "plaintiffs' Complaint [to be] a classic example of 'shotgun' pleading" and dismissing for failure to state "cognizable federal claims").  The Complaint's claim against the Relief Defendants (Count III) fails for the same reason, as it is entirely based and dependent upon the vague "unlawful activities alleged in this Complaint"—*i.e.*, the impermissible "shotgun" claims (Counts I and II) against the seven Defendants.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").[9]

The SEC's attempt to group plead its claims is not just a technical defect—it leads to the wrongful conclusion that all seven Defendants are liable for the alleged misconduct related to *all four offerings* described in the Complaint.  But that is not what the SEC has alleged in the body of the Complaint.  For example, the Complaint alleges that Rice only participated in the First Offering (lacking any venue in this District, *see supra*) and that DJ&S only participated in the Fourth Offering (lacking any venue in this District, *see supra*).  In fact, the Complaint fails to allege that Urban Pharms or TSL participated in *any of the offerings*, and therefore Defendants Urban Pharms and TSL should be dismissed.[10]  The Complaint's tactic of incorporating and

---

[9] The Complaint also fails to satisfy the basic pleading requirements against the Relief Defendants because it only alleges in conclusory terms that the Relief Defendants "received, directly or indirectly, funds or other property from APB, which are either the proceeds of, or are traceable to the proceeds of, the unlawful activities alleged in this Complaint . . . ."  Compl. ¶ 118.  These threadbare allegations do not suffice to state a claim under the federal rules. *See Iqbal*, 556 U.S. at 678.

[10] Notably, the SEC cannot state a claim against Urban Pharms and TSL on the mere basis that they are subsidiaries of American Patriot Brands.  *See In re Parmalat Secs. Litig.*, 479 F. Supp. 2d 332 (S.D.N.Y. 2007) (dismissing claims against named subsidiaries because the party failed to allege the claims against subsidiaries with requisite degree of particularity and failed to make specific allegations that would justify attributing parent corporate statements to subsidiaries).

alleging all paragraphs against all Defendants thus defies the basic pleading standards set forth in the Federal Rules of Civil Procedure and plainly fails to state a claim. *See Gonzalez-Camacho*, 318 F. Supp. 3d at 475 (warning that "shotgun" pleadings are "calculated to confuse," and "mask" "theories for relief not provided by law" and that they "completely disregard[] Rule 10(b)'s requirement that discrete claims should be plead in separate counts") (citation omitted); *see also Iqbal*, 556 U.S. at 678 (explaining that "[u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief'" and that a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).

The SEC's approach is particularly deficient given their burden in this securities fraud case. To state a claim, the SEC must allege—with particularity—that Defendants made a misstatement of material fact and acted with scienter. *See SEC v. U.S. Env't Inc.*, 897 F. Supp. 117, 122 (S.D.N.Y. 1995) (recognizing that the SEC must comply with the particularity requirements of Rule 9(b), as any other civil litigant). But here, the Complaint only group pleads these elements—and only mentions materiality twice. *See* Compl. ¶¶ 1, 83-89. That is not enough. Rather, the SEC must allege which statements were misstatements, how the statements were incorrect, and what about them was material. *See SEC v. Chan*, 465 F. Supp. 3d 18, 32 (D. Mass. 2020) (explaining that to make a claim under Section 10(b) and Rule 10b-5 thereunder, plaintiff must demonstrate (1) a material representation or omission or manipulative action, such as a scheme to defraud, (2) in connection with the purchase or sale of a security, (3) with scienter, or a wrongful state of mind and (4) the use of interstate commerce) (citations omitted). And critically, the SEC must allege fraud with specificity with respect to each Defendant. Fed.

R. Civ. P. 9(b); *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).  Because the SEC fails to meet these pleading requirements, this Court should dismiss the Complaint against all Defendants and Relief Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).[11]

B.      **The Complaint Fails To Allege Venue Under Federal Rule of Civil Procedure 12(b)(3) in this District Against Defendants Urban Pharms, DJ&S, and TSL.**

It is well established that "where there are multiple defendants, venue must be proper as to every defendant."  *Stars for Art Prod. FZ, LLC v. Dandana, LLC*, 806 F. Supp. 2d 437, 447 (D. Mass. 2011); *see also Stone #1 v. Annucci*, 2021 WL 4463033, at *13 (S.D.N.Y. Sept. 28, 2021) ("When the claims involve multiple different parties . . . 'venue must be proper . . . as to each party,' and '[t]he fact that a claim for some of the plaintiffs or against some of the defendants arose in a particular district does not make that district a proper venue for parties as to whom the claim arose somewhere else.'") (citing Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3807 (4th ed.)).  Here, the SEC has failed to allege how venue is proper as to Urban Pharms, DJ&S, TSL, and Rice, because there is nothing in the Complaint that alleges or even hints of any connection between Defendants Urban Pharms, DJ&S, TSL, Rice, and the District of Puerto

---

[11] In addition, the Complaint's allegations concerning the so-called "Fourth Offering" completely fail to satisfy the Supreme Court's standard under *Twombly* and *Iqbal*, let alone the specificity requirement under Rule 9.  To state a claim for securities fraud, the SEC must allege that the fraud involved a security, which requires (1) the investment of money (2) in a common enterprise (3) with an expectation of profits to be derived solely from the efforts of the promoter or a third party.  *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946) (the "*Howey* test").  The "Fourth Offering" does not involve a security; it involves a sale-and-lease-back arrangement of specific plots of land at the farm in Oregon.  It is axiomatic that there can be no securities fraud without a security.

In a futile effort to satisfy the *Howey* test, the Complaint alleges that the "Fourth Offering" involved "the right to receive rent and a percentage of the sales from a field on the Oregon Farm called Garden #1 (the 'Garden Units')."  Compl. ¶ 19.  The Complaint also alleges that the "Garden Units are securities because, among other things: (1) investors' monies were pooled to acquire the ownership interest in Garden #1; (2) the investors share in the revenues of cannabis produced from Garden #1; and (3) the revenues and rent are derived from the efforts of APB and the Subsidiaries."  *Id.* ¶ 21.

These allegations only offer "labels and conclusions" and "a formulaic recitation of the elements" required under *Howey*.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Although the Complaint uses the language of a securities action—*e.g.*, "pooled" money and "shared" revenue—the Complaint fails to allege how the money was pooled, how investors shared in revenue, what rent or revenue was derived from the efforts of others, or any basic facts about how any of this alleged offering worked.  In short, the SEC fails to meet Rule 8's basic pleading requirements as to the "Fourth Offering," and the SEC certainly fails to meet its heavier burden of pleading securities fraud with specificity under Rule 9.

Rico.  The SEC certainly does not allege that these four Defendants can be found, inhabit, or transact business in Puerto Rico, or that they committed an act or transaction within the District, as required by both the Securities Act and the Exchange Act.  *See* 15 U.S.C. §§ 77v(a), 78aa.  As discussed *supra*, the only arguable basis for any part of this case proceeding in the District of Puerto Rico is the "Second Offering," and the Complaint fails to allege that Urban Pharms, DJ&S, TSL, or Rice were involved in the "Second Offering" offering at all.  The Court should dismiss all claims against Defendants Urban Pharms, DJ&S, TSL, and Rice under Rule 12(b)(3).

## CONCLUSION

For the foregoing reasons, Defendants and Relief Defendants respectfully request that the Court transfer this action in its entirety to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a); or in the alternative, dismiss the SEC's Complaint for failure to allege venue sufficiently and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(3) and (6) and 28 U.S.C. § 1406(a).

Dated:  June 1, 2023                                        Respectfully submitted,


By: */s/ Bradley J. Bondi*
Bradley J. Bondi (Admitted *pro hac vice*)
Michael D. Wheatley (Admitted *pro hac vice*)
Paul Hastings LLP
2050 M St. NW
Washington, DC 20036
T: (202) 551-1701
F: (202) 551-0202
bradbondi@paulhastings.com
michaelwheatley@paulhastings.com
*Lead Counsel for Defendants and Relief Defendants*


By: */s/ Carlos A. Rodríguez-Vidal*
Carlos A. Rodríguez-Vidal
USDC No. 201213
Goldman Antonetti & Cordova, LLC
American International Plaza, Suite 1500

250 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
T: (787) 759-4117
F: (787) 767-9177
crodriguezvidal@gaclaw.com
*Counsel for Defendants and Relief Defendant*
*Legion Accounting Services, Inc.*


By: */s/ Alfredo Fernández Martínez*
Alfredo Fernández Martínez
USDC No. 210511
Delgado Fernández LLC
PO Box 11750
Fernández Juncos Station,
San Juan, Puerto Rico 00910
T: (787) 523-5647
F: (787) 764-8241
afernandez@delgadofernandez.com
*Counsel for Relief Defendants Puerto Rico One*
*Corporation and Castro Business Enterprises, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Bradley J. Bondi*